# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOANNA J. CLARK,<br><br>        Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL<br><br>SECURITY,<br><br>        Defendant. | No. 2:16-cv-00248-FVS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

      BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. This matter was submitted for consideration without oral argument. Plaintiff was represented by attorney Dana Madsen. Defendant was represented by Special Assistant United States Attorney Daphne Banay. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 14, is denied and Defendant's Motion, ECF No. 15, is granted.

**JURISDICTION**

Plaintiff Joanna J. Clark protectively filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") on September 5, 2012. Tr. 147-55, 193. Plaintiff alleged an onset date of December 31, 2004. Tr. 147, 152. Benefits were denied initially (Tr. 105-11) and upon reconsideration (Tr. 117-20). Plaintiff appeared at a hearing before an administrative law judge (ALJ) on December 2, 2014. Tr. 34-61. On January 9, 2015, the ALJ denied Plaintiff's claim (Tr. 12-27), and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Joanna J. Clark ("Plaintiff") was 49 years old at the time of the hearing. Tr. 50. She graduated from high school and attended a "little bit" of college. Tr. 36, 50. She has spent most of her working life doing part-time jobs such as waitress and convenience store clerk. Tr. 36, 48. She testified that she has lost jobs because she cannot concentrate, does not comprehend well, and does not get along well with other people. Tr. 41. She last worked as a baker. Tr. 39. She was fired from the bakery because she asked the same questions over and over and had to

stand for too long.  Tr. 48.  She has not attempted to get a job since 2013 because she "can't concentrate that well" and has "really bad back pain."  Tr. 40.

Plaintiff's back pain originated with a motor vehicle accident in August 2013, although she alleged at the hearing that she also suffers from scoliosis and that her back pain started "a couple years ago."  Tr. 41-42.  If she stands too long, there is a burning sensation in the middle of her back and her leg goes numb.  Tr. 42.  Her right hip feels like it's going to give out.  Tr. 43-44.  She cannot do chores because her back hurts.  Tr. 44.  Plaintiff testified she also has headaches which are improved with medication and rest.  Tr. 47-48.

Plaintiff testified her mental health problems involve anxiety and mood swings.  Tr. 46.  She cannot sleep sometimes due to anxiety.  Tr. 45.  Her moods change frequently from happy to down and depressed within ten to 15 minutes.  Tr. 47.  She does not like being around people and experiences anxiety when going to a store.  Tr. 47.

Plaintiff has a history of substance abuse, but testified that she had not used cocaine in over a year.  Tr. 39.  The last time she used was a week-long relapse.  Tr. 46.  She testified that before the relapse, she had been clean for a couple of years after treatment.  Tr. 46.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i),(v); 416.920(a)(4)(i),(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 31, 2004, the alleged onset date. Tr. 14. At step two, the ALJ found Plaintiff has the following severe impairments: asthma/recurrent upper respiratory symptoms; major depressive disorder; and generalized anxiety disorder. Tr. 14. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20. The ALJ then found Plaintiff has the capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> She should avoid concentrated exposure to extreme fumes, odors, dust, gases or poor ventilation. She has the ability to understand and remember locations and work-like procedures. She has the ability to understand, remember, and carry out short and simple instructions; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work related decisions; complete a normal workday and workweek without interruptions from

psychologically based symptoms; and perform at a consistent pace. She has the ability to ask simple questions or request assistance; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. She has the ability to be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals and make plans independently of others. She would work best in an environment with superficial public contact; working in proximity to but not close cooperation with co-workers or supervisors; and would work best in an environment where the routine was predictable with minimal changes.

Tr. 21. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 25. At step five, after considering Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as production helper, mail clerk, or telephone information clerk. Tr. 25-26. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 31, 2004, through the date of the decision. Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for review:

1.  Whether the ALJ improperly rejected Plaintiff's testimony; and

2.  Whether the ALJ improperly rejected medical opinion evidence;

ECF No. 14 at 10-18.

**DISCUSSION**

**A.    Adverse Credibility Finding**

Plaintiff contends the ALJ improperly rejected Plaintiff's testimony.  ECF No. 14 at 11-15.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. Tr. 22. The ALJ gave four reasons for the negative credibility determination.

First, the ALJ found Plaintiff's credibility was undermined by her failure to seek mental health counseling or treatment. Tr. 22. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 416.929(c)(3)(iv),(v); 404.1529(c)(3)(iv),(v) (2016).[1] The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-1114. The ALJ observed that although Plaintiff testified she had recently begun seeing Dr.

_____

[1]These regulations were revised effective March 26, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017). Since the revisions were not effective at the time of the ALJ's decision, they does not apply to this case.

1 Neils for mental health treatment, she did not seek that treatment until almost 10

2 years after the alleged onset of disability.  Tr. 22-23, 37.  Unless there is evidence

3 that Plaintiff's failure to seek treatment was due to her mental health issues, the

4 ALJ's consideration of the lack of treatment was reasonable.

5        Plaintiff contends that Dr. Mabee's finding that she has limited judgment

6 (Tr. 273) and Dr. Neils' finding that Plaintiff has limited insight (Tr. 279) establish

7 that her condition interfered with her ability to seek treatment.  ECF No. 14 at 12.

8 However, as noted by Defendant, neither finding was tied to or identified as

9 impacting Plaintiff's ability to seek mental health treatment.  ECF No. 15 at 6.

10 Further, Plaintiff also suggests that her lack of insurance prevented her from

11 obtaining treatment.  ECF No. 14 at 12.  Disability benefits may not be denied

12 because of the claimant's failure to obtain treatment he cannot obtain for lack of

13 funds.  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  Defendant observes

14 that both records cited by Plaintiff indicate she stated she had no insurance, yet

15 both medical providers resumed or continued medications for depression or

16 anxiety.  ECF No. 15 at 7, Tr. 251-52.  This reasonably suggests that Plaintiff was

17 both capable of seeking treatment and able to obtain treatment despite a lack of

18 funds.  There is no evidence in the record that Plaintiff inquired about or attempted

19 to seek counseling or other mental health treatment and was turned away for lack

20

of insurance. Thus, the ALJ reasonably considered Plaintiff's lack of treatment in making the credibility finding.

Second, the ALJ found that Plaintiff's noncompliance with medication diminishes her credibility. Tr. 22. It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113 -1114; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair v. Bowen*, 885 F.2d 597, 603 -604 (9th Cir. 1989). The ALJ cited several notes in the record indicating Plaintiff was not taking medication as prescribed. Tr. 16-17, 250, 254, 289, 318. She also admitted taking medication not belonging to her. Tr. 23, 250. This is a clear and convincing reason supported by substantial evidence for the credibility determination.

Third, the ALJ noted numerous inconsistencies in Plaintiff's reported history. Tr. 22. A strong indicator of credibility is the consistency of the individual's own statements with other information in the case record. S.S.R. 96-7p. In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen*, 80 F.3d at 1284. The ALJ noted inconsistencies between Plaintiff's testimony and the evidence regarding work history (Tr. 36, 159-166, 195); education (187, 236, 262, 270, 331); and reports to medical providers about previous loss of consciousness (Tr. 262, 332). Tr. 23.

Additionally, the ALJ noted numerous inconsistencies in Plaintiff's reports regarding her drug use and chemical dependency treatment history. Tr. 23, 243, 246, 247, 262, 270, 294, 305, 343. Conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding. *Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Plaintiff's explanation for these inconsistencies is that over the time period of these statements, Plaintiff was using drugs, then became clean and attended treatment, then relapsed, and finally became abstinent again. ECF No. 14. However, this explanation supports the ALJ's conclusion that Plaintiff's statements over the course of the record are not reliable. This is a clear and convincing reason for the credibility finding.

Fourth, the ALJ found Plaintiff's daily activities are not consistent with her claims of total disability. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be

sufficient to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603.

Furthermore, "Even where [Plaintiff's daily] activities suggest some difficulty

functioning, they may be grounds for discrediting the claimant's testimony to the

extent that they contradict claims of a totally debilitating impairment." *Molina*,

674 F.3d at 1113.

The ALJ cited evidence indicating Plaintiff has friends and relationships

with her mother and daughter (Tr. 246, 262, 293); she has no difficulty with

activities of daily living and self-care (Tr. 262, 270); she babysat her

granddaughter, took care of pets, prepared simple meals, cleaned, did laundry,

pulled weeds, drove, shopped and played bingo (Tr. 208-10, 270). Tr. 23. Plaintiff

contends, "These activities do not contradict Ms. Clark's testimony, and the ALJ

does not explain how she arrived at this finding." ECF No. 14 at 13. However, the

ALJ also noted that, among other testimony about her alleged limitations, Plaintiff

testified she can hardly do chores because of pain, all she ever does is rest, she

cannot squat, stoop or reach down, and she has bad anxiety, especially around too

many people. Tr. 22, 42-47. This and other testimony was reasonably determined

by the ALJ to be inconsistent with the activities Plaintiff performed. This is a clear

and convincing reason for the credibility finding.

Based on the foregoing, the ALJ provided clear and convincing reasons

supported by substantial evidence for the credibility determination.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider and weigh the psychological opinions of Jeannette Higgins, Psy.D, Scott Mabee, Ph.D, and Rob Neils, Ph.D.  ECF No. 14 at 15-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-31.

### 1.    *Jeannette Higgins, Psy.D.*

Plaintiff contends the ALJ improperly rejected portions of the opinion of Jeannette Higgins, Psy.D, an examining psychologist. ECF No. 14 at 16. Dr. Higgins completed a psychological evaluation in November 2012. Tr. 261-65. She diagnosed major depressive disorder, recurrent, severe; anxiety disorder NOS; cocaine dependence in sustained full remission by client report; and deferred Axis II diagnosis but noted avoidant traits. Tr. 265. Dr. Higgins opined that Plaintiff has the ability to understand, remember, and carry out simple instructions and to make simple work-related decisions. Tr. 265. She also opined that Plaintiff has the ability to appropriately interact with a supervisor and coworkers "who are patient and supportive," but does not have the ability to interact appropriately with the public. Tr. 265. Dr. Higgins found Plaintiff does not have the ability to respond appropriately to typical work situations and to changes in a routine work setting. Tr. 265.

The ALJ gave some weight to Dr. Higgins' opinion.  Tr. 24.  The ALJ gave weight to Dr. Higgins' opinion that Plaintiff is capable of performing simple instructions and making simple decisions but rejected Dr. Higgins' opinion that Plaintiff has significant limitations in the ability to interact appropriately with others or respond appropriately to changes in a routine work setting.  Tr. 24.  The ALJ gave two reasons for rejecting these two findings from Dr. Higgins' opinion. Tr. 24.

First, the ALJ concluded that Dr. Higgins' findings were internally inconsistent.  Tr. 24.  A medical opinion may be rejected by the ALJ if it contains inconsistencies.  *Bray*, 554 F.3d at 1228.  The ALJ observed that while Plaintiff scored in the borderline range of intellectual functioning on the WAIS-IV, the results of a mental status exam were essentially normal, and the Trail Making A and B test scores were average to high average.  Tr. 263-64.  Plaintiff argues the ALJ's finding is not supported by the evidence because Dr. Higgins obtained poor results on memory testing and IQ test results in the fifth percentile.  ECF No. 14 at 16.  However, Plaintiff fails to address the findings identified by the ALJ as inconsistent with those test results.  Substantial evidence therefore supports this specific, legitimate reason cited by the ALJ.

Second, the ALJ observed that Dr. Higgins' findings are inconsistent with other evidence in the record.  Tr. 24.  The consistency of a medical opinion with

the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. The ALJ noted other testing in the record indicates Plaintiff's intellectual functioning was in the average range, and that other mental status exams were essentially normal. Tr. 244, 246, 273, 296. This specific, legitimate reason is supported by substantial evidence.

Third, the ALJ found Dr. Higgins relied on Plaintiff's statements which were determined by the ALJ to be not credible. Tr. 24. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. The ALJ observed that Plaintiff's statement to Dr. Higgins that she "just can't function" is not consistent with Plaintiff's daily activities and lack of mental health treatment, discussed *supra*. Tr. 24, 261. Further, the ALJ reasonably determined Plaintiff's statements were not credible and to the extent that Dr. Higgins' findings were based on her statements, the ALJ appropriately rejected those findings. This is a reasonable conclusion based on the evidence.

Plaintiff contends test results regarding her memory and IQ support Dr. Higgins' findings, and therefore the opinion is not based primarily on her self-report. ECF No. 14 at 16. The test results cited by Plaintiff involve her memory

and cognitive function. ECF No. 14 at 16 (citing Tr. 263-64). However, the ALJ actually gave weight to that portion of Dr. Higgins' opinion involving memory and cognitive function. Tr. 24. The test results cited by Plaintiff are not relevant to the findings rejected by the ALJ: significant limitations in the ability to interact appropriately with others or respond appropriately to changes in a routine work setting. Because the ALJ found Dr. Higgins report is internally inconsistent and is inconsistent with other evidence in the record, the ALJ reasonably concluded Dr. Higgins gave weight to Plaintiff's unreliable self-report in assessing the two significant social limitations. Therefore, this is a specific, legitimate reason for rejecting that portion of Dr. Higgins' opinion.[2]

2.    *Scott Mabee, Ph.D.*

Plaintiff contends the ALJ improperly rejected the opinion of examining psychologist Scott Mabee, Ph.D. In October 2013, Dr. Mabee completed a DSHS

_____

[2] Even if the ALJ improperly determined Dr. Higgins relied on Plaintiff's self-report, any error would be harmless because the ALJ cited two other specific, legitimate reasons for rejecting the significant limitations assessed by Dr. Higgins, and those reasons are not challenged by Plaintiff. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

Psychological/Psychiatric Evaluation form. Tr. 270-73. He diagnosed major depressive disorder, moderate; rule out cocaine abuse; and personality disorder NOS. Tr. 271. He assessed one marked limitation in the ability to complete a normal work day and work week without interruption from psychologically based symptoms, as well as seven moderate limitations. Tr. 272.

The ALJ gave some weight to Dr. Mabee's opinion that Plaintiff had mild to moderate limitations in the ability to perform basic work activities. Tr. 24. However, the ALJ rejected Dr. Mabee's assessment of a marked limitation in the ability to complete a normal work day and work week without interruption from psychologically based symptoms. Tr. 24.

First, the ALJ found that the rejected limitation is inconsistent with Dr. Mabee's exam findings. Tr. 24. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ observed that Plaintiff's mental status exam and Trail Making test results were largely normal, and the abnormalities in concentration were explained by her recent drug use. Tr. 24, 273. Thus, the ALJ reasonably found there is little basis in Dr. Mabee's opinion to justify the marked limitation in the ability to complete a normal workday or work week.

Second, the ALJ found Dr. Mabee's assessment regarding the ability to complete a work day or work week was impacted by Plaintiff's cocaine use. Tr. 24. Opinion evidence may be discounted if drug or alcohol use affects the opinion. *See Morgan*, 169 F.3d at 603; *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (1993). Plaintiff notes that Dr. Mabee specifically stated: "While there has been cocaine use, it appeared that it was concomitant with the mood disturbance rather than the cause of the mood problem. Substance abuse likely would exacerbate the above limitations." Tr. 272. The ALJ observed that while Dr. Mabee indicated cocaine would exacerbate Plaintiff's problem, and acknowledged there was cocaine use at the time of the exam, he inconsistently failed to link the errors in performing serial sevens and losing her train of thought to the impact of drug use. Tr. 24, 270, 272. This is supported by the ALJ's observation that Plaintiff had no similar difficulties during other exams in the record. Tr. 24. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. This is therefore a specific, legitimate reason for rejecting the limitation on completing a normal workday and workweek assessed by Dr. Mabee.

### 3. *Rob Neils, Ph.D.*

Plaintiff contends the ALJ improperly rejected the opinion of Rob Neils, Ph.D., an examining psychologist. ECF No. 14 at 17-18. Dr. Neils completed a

psychological evaluation and a Mental Medical Source Statement form in October 2014. Tr. 274-76, 278-80. He diagnosed bipolar disorder and assessed 12 marked and two severe limitations. Tr. 274-76, 278. Dr. Neils found that Plaintiff fails to stick to her assigned work routine "even with close, special, one-on-one supervision." Tr. 279. He opined that Plaintiff is very "stress brittle" and cannot handle even minimal stress in her work or personal life. Tr. 279. The ALJ gave no weight to Dr. Neils' opinion. Tr. 24.

First, the ALJ found Dr. Neils limitations to be inconsistent with the medical record. Tr. 24. As noted *supra*, the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ found the limitations assessed by Dr. Neils are unsupported elsewhere in the record and are in fact so extreme that a person with those limitations could not live independently and would likely be institutionalized. Tr. 24. Further, the ALJ observed that symptoms such as hearing voice and having delusions were not noted in any other part of the record, nor were manic symptoms noted elsewhere. Tr. 24-25. This is a specific, legitimate reason supported by substantial evidence for rejecting Dr. Neils' opinion.

Second, the ALJ gave no weight to Dr. Neils' opinion because it was based primarily on Plaintiff's and her mother's statements. Tr. 24. As noted *supra*, a

medical source opinion may be rejected if it is based on subjective complaints which were properly discounted, *Tonapetyan*, 242 F.3d at 1149, and the ALJ made a legally sufficient finding to that effect in this case. The ALJ also noted that Dr. Neils indicated and Plaintiff testified he had not treated Plaintiff, and Dr. Neils identified no independent basis for his findings. Tr. 24, 278. This is a specific, legitimate reason for giving less weight to Dr. Neils' opinion.

Third, the ALJ noted that Dr. Neils did not discuss the impact of Plaintiff's substance use on his findings. Tr. 25. As discussed *supra*, opinion evidence may be discounted if substance use impacts the opinion. *See Morgan*, 169 F.3d at 603; *Andrews*, 53 F.3d at 1042-43. The ALJ observed that Dr. Neils did not review other evidence in the record, including relatively normal mental status exams. Tr. 25. The amount of relevant evidence that supports a medical opinion is a relevant factor in weighing the opinion evidence. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ determined other evidence in the record does not support Dr. Neils' opinion, which reasonably suggests that his findings may have been impacted by substance use. Thus, the ALJ gave specific, legitimate reasons supported by substantial evidence for giving no weight to Dr. Neils' opinion.

## CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

To the extent the evidence could be interpreted more favorably to Plaintiff, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In this case, the ALJ's interpretation of the evidence was rational and supported by substantial evidence in the record. The ALJ's credibility determination and findings regarding the medical opinion evidence are legally sufficient. Therefore, the ALJ's decision is affirmed.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 15, is GRANTED.

The District Court Executive is directed to file this Order and forward copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED December 4, 2017.

<u>s/*Fred Van Sickle*</u>
Fred Van Sickle
Senior United States District Judge